E-FILED
Tuesday, 29 August, 2006  02:49:38 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MAY F. NUNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 04-3244 |
| | ) | |
| THE ILLINOIS STATE BOARD OF EDUCATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

This is an Americans with Disabilities Act lawsuit.

The Illinois State Board of Education moves for Summary Judgment.

Motion allowed.

## FACTS

*Pro se* Plaintiff May Nunn was employed by Defendant Illinois State Board of Education (the "ISBE") and its predecessor from 1964 to 2003. Nunn worked as a Principal Performance Consultant in the

1

System of Support from 2001 until her discharge on March 25, 2003. At the time of her discharge, Nunn's primary responsibility was to facilitate the improvement of student achievement in districts and schools deemed needing improvement or corrective action. Nunn spent approximately forty percent of her time on-site at school district facilities and sixty percent of her time in the ISBE's offices.

In late 2002 and early 2003, Nunn began exhibiting behavior the ISBE considered inappropriate for the workplace. Nunn's coworkers observed her rocking in her seat, weeping and sobbing at her workspace, skipping around cubicles in her work area while chanting, moaning, crying out, stamping her feet, and running through the office chanting "Praise Jesus" while shaking her hands in the air.

Nunn also exhibited unusual behavior while working outside the office. During an ISBE presentation, Nunn made several references to God and to prayer. At a meeting between ISBE staff and staff from the South Cook Intermediate Service Center, Nunn chanted praises to God and isolated herself in the corner of the room with eyes closed while

chanting. In her deposition, Nunn variously admitted the foregoing conduct or stated that she could not remember whether it occurred.

After receiving reports of Nunn's conduct, the ISBE decided to limit her travel. At about this same time, some of Nunn's co-workers told ISBE's human resources office and legal office that they were concerned for their safety. The ISBE also began to have doubts about Nunn's ability to perform her job duties. It arranged for her to undergo an independent medical evaluation with psychiatrist Dr. Philip E. Bornstein.

In Februay 2003, Dr. Bornstein diagnosed Nunn as suffering from bipolar affective disorder manic type with severe psychosis (auditory hallucinosis). Dr. Bornstein opined that Nunn's symptomology had gone on at least six to twelve months and had been escalating. Dr. Bornstein further indicated that Nunn's condition substantially interfered with her ability to properly behave in the workplace and that she was not functional. Dr. Bornstein noted that Nunn had no insight into her disorder and recommended that she not be allowed to remain in the

workplace because her condition would likely worsen and result in greater workplace disruption. He recommended that Nunn be allowed to return to work only after receiving adequate treatment and medical clearance.

On March 3, 2003, the ISBE told Nunn that she would not be able to return to work until she received medical clearance. An ISBE official, Assistant Superintendent Lynne Haeffele Curry, informed Nunn that she had one year to return to work and that she could use paid time off via accumulated sick days to work toward her return to work. Nunn indicated that she was not sick and would not use sick time or take leave. The ISBE gave Nunn until March 6, 2003, to decide whether she was willing to take a leave or use her paid sick time. Nunn refused to take time off or get treatment.

The ISBE sought Nunn's discharge and a pre-disciplinary meeting was held on March 14, 2003. Nunn was discharged from the ISBE effective March 25, 2003. Nunn sued the ISBE, alleging that it fired her because of her disability. The ISBE moves for summary judgment contending that Nunn cannot establish a prima facie case under the

Americans with Disabilities Act, 42 U.S.C. 12101, *et seq.* (the "ADA") and, alternatively, that Nunn's conduct provided a legitimate, non-discriminatory reason for terminating her.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (discussing Fed.R.Civ.P. 56). The non-movant's evidence is to be believed and all justifiable inferences are to be drawn in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court may grant summary judgment only when the record shows that a reasonable jury could not find for the non-movant. Id. at 248.

The non-movant may withstand summary judgment only by showing that the evidence is such that a reasonable jury could render a

verdict in its favor. Id. The non-movant may not merely rest upon the allegations or details in his pleading, but must set forth specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 322, 106 S.Ct. 2548; Anderson, 477 U.S. at 248, 106 S.Ct. 2505.

## ANALYSIS

The ADA prohibits discrimination "against a qualified individual with a disability." 42 U.S.C. § 12112(a). To make out a prima facie case of discrimination under the ADA, a plaintiff must show: (1) that she suffers from a disability; (2) that she is qualified to perform the essential functions of the job in question, with or without reasonable accommodation; and (3) that she has suffered an adverse employment action as a result of his disability. Jackson v. City of Chicago, 414 F.3d 806, 810 (7th Cir. 2005); see also 42 U.S.C. § 12102(2). If a plaintiff establishes a prima facie ADA claim, the burden shifts to the employer to offer a legitimate nondiscriminatory reason for the employment decision. See Nese v. Julian Nordic Const. Co., 405 F.3d 638, 641 (7th Cir. 2005) If the employer succeeds, then the burden shifts back to the plaintiff to

establish that the proffered reason for the employment action is pretextual. Id., citing DeLuca v. Winer Indus., Inc., 53 F.3d 793, 797 (7th Cir. 1995) (applying the indirect method of proof to ADA cases).

Bipolar disorder is a disability under the ADA. See Bultemeyer, 100 F.3d at 1284 (7th Cir. 1996). Furthermore, it is axiomatic that termination is an adverse employment action. Thus, the ISBE concedes both of these elements. Its summary judgment motion contends that Nunn is not qualified to perform the essential functions of her job and that her conduct provided the ISBE with a legitimate, nondiscriminatory reason for firing her.

There are three reasons why Nunn's ADA claim fails:

First, under the ADA, a "qualified individual with a disability," is a disabled person who can, with or without reasonable accommodation, perform the essential functions of a position. See Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co., 201 F.3d 894, 898 (7th Cir. 2000). At the time of her discharge, Nunn was employed as a Principal Performance Consultant. The terms of the job description for that position show that

7

Nunn was expected to spend approximately sixty percent of her time in the ISBE's offices and forty percent of her time performing on-site evaluations at school district facilities.

Although not stated in Nunn's job description, it was necessary for Nunn to conduct herself in a professional manner. Professional conduct is an inherent duty of any worker. Nunn could not meet this most basic requirement. She demonstrated a serious lack of professionalism by skipping around the office, chanting, crying, moaning, wailing, stamping her feet, rocking in her chair, and shaking her hands in the air while praising Jesus. Several coworkers independently provided details of this conduct in affidavits.

In her opposition to summary judgment, Nunn acknowledges that she acted inappropriately but denies the specific conduct described above. See Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. Judg. at p. 5, ¶¶ 4-5. She fails, however, to offer any evidence to support her denial. Thus, her denial cannot defeat ISBE's summary judgment motion. See Haywood v. N. Am. Van Lines, Inc., 121 F.3d 1066, 1071 (7th Cir.

1997) (conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment).

Dispositive evidence is found in Nunn's deposition. There, Nunn variously admitted her coworkers' allegations or claimed she could not recall her conduct. <u>See</u> Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. Judg. (d/e 23 (Ex. 6 at pp. 77-84)). Her lack of recall does not cast doubt on the coworkers' allegations or create a genuine issue of material sufficient to defeat summary judgment. <u>See</u> <u>Fogle v. Williams Chevrolet/GEO, Inc. an Bank One Wisconsin</u>, No. 00 C 50227, 2002 WL 1433736 at *1 (N.D.Ill. Jul. 2, 2002) (failure to recall signing a document does not invalidate the validity or effect of the document); <u>Rocket v. Marten Transport Ltd.</u>, No. 99 C 3957, 2001 WL 1155256 at *6 (N.D.Ill. Sept. 28, 2001) (the plaintiff's inability to recall instances of misconduct did not create a genuine issue of material fact sufficient to defeat a motion for summary judgment). Therefore, the unrefuted evidence shows that Nunn's conduct disrupted the office and interfered with ISBE business. Her inability to behave in a professional manner

9

and the numerous disruptions she caused prevents her from establishing that she was a "qualified individual with a disability".

Second, Nunn cannot prevail on her ADA claim because she did nothing to control her bipolar disorder. The Seventh Circuit has stated that a plaintiff cannot recover under the ADA if through plaintiff's own fault plaintiff fails to control an otherwise controllable illness. See Siefken v. Village of Arlington Heights, 65 F.3d 664, 666 (7th Cir. 1995) (plaintiff's failure to monitor and control his controllable diabetes barred recovery under the ADA). The medical evidence shows that Nunn's bipolar disorder was a treatable condition. The ISBE gave Nunn the opportunity to get treatment and to return to work once she was medically able to do so. Nunn refused and the ISBE terminated her[1]. Her decision bars recovery under the ADA. Id.

Third, even if Nunn had established a prima facie ADA claim, the ISBE offered a legitimate, nondiscriminatory reason for her termination when it stated that it fired Nunn because of her disruptive behavior.

---

[1] Nunn subsequently got treatment but this was too little, too late. Her failure to timely act makes her later efforts irrelevant.

10

Nunn offers no evidence to show that ISBE's proffered reason for termination was pretextual.  For this reason too, the ISBE is entitled to summary judgment.  See Nese, 405 F.3d at 641.

ERGO, Defendant Illinois State Board of Education's Motion for Summary Judgment (d/e 20) is ALLOWED.

IT IS SO ORDERED.

ENTER:    August 29, 2006

FOR THE COURT:                    s/ Richard Mills
                                                                United States District Judge